# EXHIBIT A

Robert A. Blixt
Certified Process Server #512
1st Judicial Circuit of Florida
Served _____ Date _____ Time _____

# Commonwealth of Massachusetts

SUFFOLK, ss.



SUPERIOR COURT DEPARTMENT
OF THE TRIAL COURT
CIVIL ACTION

No. 13-2512

GEOVANTAGE, INC. _____, Plaintiff(s)

v.

JAMES E. KAIN _____, Defendant(s)

## SUMMONS

To the above-named Defendant: James E. Kain, 122 Quincy Circle, Seaside, FL 32459

You are hereby summoned and required to serve upon Brendan T. St. Amant, Esq. of Donnelly, Conroy & Gelhaar, LLP plaintiff's attorney, whose address is One Beacon St., 33rd Fl, Boston, MA 02108, an answer to the complaint which is herewith served upon you, within 20 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. You are also required to file your answer to the complaint in the office of the Clerk of this court at Boston either before service upon plaintiff's attorney or within a reasonable time thereafter.

Unless otherwise provided by Rule 13(a), your answer must state as a counterclaim any claim which you may have against the plaintiff which arises out of the transaction or occurrence that is the subject matter of the plaintiff's claim or you will thereafter be barred from making such claim in any other action.

Witness, Barbara J. Rouse, Esquire, at Boston, the 11th day of July, in the year of our Lord two thousand thirteen.

*Michael Joseph Donovan*
Clerk/Magistrate

NOTICE TO DEFENDANT — You need not appear personally in court to answer the complaint, but if you claim to have a defense, either you or your attorney must serve a copy of your written answer within 20 days as specified herein and also file the original in the Clerk's Office.

NOTES.
1. This summons is issued pursuant to Rule 4 of the Massachusetts Rules of Civil Procedure.
2. When more than one defendant is involved, the names of all defendants should appear in the caption. If a separate summons is used for each defendant, each should be addressed to the particular defendant.
3. TO PLAINTIFF'S ATTORNEY: PLEASE CIRCLE TYPE OF ACTION INVOLVED
   (1) TORT — (2) MOTOR VEHICLE TORT — (3) CONTRACT — (4) EQUITABLE RELIEF — (5) OTHER

FORM CIV.P. 1 3rd Rev. 10M - 11/10

## PROOF OF SERVICE OF PROCESS

I hereby certify and return that on _____, 200___, I served a copy of the within summons, together with a copy of the complaint in this action, upon the within-named defendant, in the following manner (See Mass. R. Civ. P. 4 (d) (1-5)):

_____

_____

_____

Dated:_____, 200___.     _____

N.B. TO PROCESS SERVER:—
PLEASE PLACE DATE YOU MAKE SERVICE ON DEFENDANT IN
THIS BOX ON THE ORIGINAL AND ON COPY SERVED ON DEFENDANT.

|  |
|---|
| , 200 . |

**Commonwealth of Massachusetts**

SUFFOLK, ss.

SUPERIOR COURT DEPARTMENT
OF THE TRIAL COURT
CIVIL ACTION 13-2512
No. _____

GEOVANTAGE, INC. _____, Plff(s).

v.

JAMES E. KAIN _____, Deft(s).

SUMMONS
(Mass. R. Civ. P. 4)

(AFFIX FILING STAMP HERE)

| CIVIL ACTION COVER SHEET | DOCKET NO B.L.S. | Trial Court Of Massachusetts Superior Court Department County: SUFFOLK |
|---|---|---|
| PLAINTIFF(S)<br>GeoVantage, Inc. | | DEFENDANT(S)<br>James E. Kain |
| ATTORNEY, FIRM NAME, ADDRESS AND TELEPHONE Board of Bar Overseers number<br>T. Christopher Donnelly (BBO# 129930)<br>Brendan T. St. Amant (BBO# 672719)<br>DONNELLY, CONROY & GELHAAR, LLP<br>One Beacon Street, 33rd Floor<br>Boston, Massachusetts 02108<br>Tel. (617) 720-2880 | 13-2512 | ATTORNEY (if known)<br>Unknown<br><br>RECEIVED<br>JUL 11 2013<br>SUPERIOR COURT CIVIL<br>MICHAEL JOSEPH DONOVAN<br>CLERK/MAGISTRATE |

Origin Code Original Complaint

| | TYPE OF ACTION AND TRACK DESIGNATION (See reverse side) | | |
|---|---|---|---|
| CODE NO.<br>(BE.1) | TYPE OF ACTION (specify)<br>Breach of Fiduciary Relationship | TRACK<br>(B) | IS THIS A JURY CASE? *<br>YES |

As detailed below, this case centers on the breaches of fiduciary duty committed by James E. Kain ("Kain"), his misappropriation of GeoVantage's intellectual property rights, his commission of unfair and deceptive trade practices, and his negligence. The case falls squarely within the BLS acceptance criteria, particularly categories d.1 and e.1. In addition, this case is related to and shares similar facts to *GeoVantage, Inc. v. SimWright, Inc.*, Civil Action No. SUCV 2012-02877-BLS1, which is currently in the Business Litigation Session. Accordingly, on substantive and judicial efficiency grounds, this matter should also be in the Business Litigation Session.

GeoVantage, a developer of digital aerial imaging technology, was founded by William Pevear and Kain in 1998. As a condition of the receipt of stock in GeoVantage, Kain—a founder, shareholder, director, vice president, Head of Operations, and Chief Technology officer of GeoVantage—was obligated to sign a non-competition and non-disclosure agreement which contained certain non-disclosure and non-competition provisions which tracked the normally understood fiduciary duties a director and officer have.

Kain had previously worked with the principals of SimWright, an image processing and software development firm, which acted as a subcontractor to GeoVantage on several projects. Kain introduced SimWright to GeoVantage and resisted having a more formal contract put in place between SimWright and GeoVantage. Kain assured GeoVantage continuously that SimWright's subcontracted software development would not impinge upon GeoVantage's intellectual property rights.

GeoVantage eventually learned that, despite Kain's assurances to the contrary, SimWright claimed that it owned the intellectual property which SimWright had specifically contracted to develop for GeoVantage. GeoVantage filed suit against SimWright in July 2012.

On January 2, 2013, Kain resigned from GeoVantage's board and on March 3, 2013, Kain resigned as an employee from GeoVantage to "pursu[e] other opportunities." On April 14, 2013, GeoVantage learned that Kain had started a new company, WaldoAir Corporation ("WaldoAir"), a direct competitor of GeoVantage, using GeoVantage's intellectual property. GeoVantage also learned that Kain has applied for two patents based on intellectual property that Kain was in the process of developing while he was employed at GeoVantage. Upon information and belief, Kain also obtained GeoVantage's intellectual property from SimWright to benefit WaldoAir.

By his actions Kain has breached his fiduciary duties to GeoVantage, misappropriated the trade secrets and confidential information of GeoVantage, has engaged in unfair and deceptive trade practices, and has acted with negligence. GeoVantage asserts that it has suffered irreparable harm, seeks an order permanently enjoining Kain from using GeoVantage's intellectual property, and requests that its actual damages and multiple damages be awarded to it.

* A Special Tracking Order shall be created by the Presiding Justice of the Business Litigation Session at the Rule 16 Conference.

*GeoVantage, Inc. v. SimWright, Inc.*, Civil Action No. SUCV 2012-02877-BLS1, Suffolk Superior Court – Business Litigation Session

"I hereby certify that I have complied with the requirements of Rule 5 of the Supreme Judicial Court Uniform Rules on Dispute Resolution (SJC Rule 1:18) requiring that I provide my clients with information about court-connected dispute resolution services and discuss with them the advantages and disadvantages of the various methods."

Signature of Attorney of Record _BL St A_____ DATE: 7/11/2013

# COMMONWEALTH OF MASSACHUSETTS

Suffolk, ss.                                                Superior Court Department

| | |
|---|---|
| GEOVANTAGE, INC., <br><br> Plaintiff, <br><br> v. <br><br> JAMES E. KAIN, <br><br> Defendant. | 13-2512 <br><br> Civil Action No. SUCV2013- <br><br> RECEIVED <br> JUL 1 1 2013 <br> SUPERIOR COURT CIVIL <br> MICHAEL JOSEPH DONOVAN <br> CLERK/MAGISTRATE |

## COMPLAINT AND JURY DEMAND

Pursuant to Mass. R. Civ. P. 8, Plaintiff GeoVantage, Inc. ("GeoVantage") brings this action to recover damages, attorneys' fees, expenses, and costs incurred as a consequence of the Defendant's breaches of his fiduciary duties, misappropriation of confidential information and trade secrets, and unfair and deceptive trade practices. GeoVantage also seeks injunctive relief against the Defendant.

### PARTIES

1. Plaintiff GeoVantage is a corporation organized under the laws of Delaware with a principal place of business at 3 Centennial Drive, Suite 350, Peabody, MA 01960.

2. Defendant James E. Kain ("Kain") is an individual who upon information and belief resides currently at 122 Quincy Circle, Seaside, FL 32459.

### JURISDICTION

3. This Court has jurisdiction over this Complaint alleging a civil cause of action pursuant to M.G.L. ch. 212, § 4.

4. This Court has personal jurisdiction over Kain because Kain is and was at all material times one of four shareholders in GeoVantage and was a director and vice president of GeoVantage until January 2, 2013. In addition, this Court has personal jurisdiction over Kain pursuant to M.G.L. ch. 223A, § 3 because this action arises from Kain having transacted business in Massachusetts and/or Kain having caused tortious injury by an omission in Massachusetts and/or Kain having caused tortious injury in Massachusetts by an act or omission outside Massachusetts and engaging in a persistent course of conduct in Massachusetts.

## FACTS

### I. Kain's Involvement in GeoVantage's Founding and Relationship with SimWright

5. In 1998, Kain co-founded GeoVantage with William Pevear ("Pevear"). GeoVantage developed and continues to develop a technically complex digital aerial imaging technology platform and specialized camera systems to perform aerial imaging services for commercial applications.

6. Kain was living in Waltham, Massachusetts, at the time of the founding of GeoVantage. Kain served as a director of GeoVantage. He also served as its Vice President, Head of Operations, and Chief of Technology. As such, Kain stood as a fiduciary to GeoVantage, owing it a duty of good faith, a duty of care, and a duty of undivided and unselfish loyalty.

7. Recognizing GeoVantage's unique capabilities, John Deere acquired GeoVantage in 2005 and merged it into other entities that John Deere operated.

8. In or around December 2005, after John Deere acquired GeoVantage, Kain approached SimWright, an image processing and software development firm, to act as a subcontractor for GeoVantage. Kain had known the President of SimWright, Kerry Christopher

("Christopher") and SimWright's Chief Technology Officer, Dan Mathews ("Mathews"), when Christopher and Mathews worked with Kain at TASC, Inc., a private defense contractor. During 2006 and 2007, John Deere paid SimWright to develop and improve various hardware and software as works-for-hire for GeoVantage, including GeoVantage's GeoScanner software. The GeoScanner software provides the control of GeoVantage's aerial imaging products.

## II. Kain's Obligations and Activities within GeoVantage After John Deere

9. In November 2007, John Deere decided to downsize its services division. Kain, Pevear, and Matthew Herring ("Herring") acquired the business from John Deere in or around December 2007. The repurchase agreement between GeoVantage and John Deere provided that all rights and obligations to the intellectual property contracted for during the John Deere ownership period were assigned to GeoVantage.

10. GeoVantage commenced business in its current form in January 2008. Kain travelled to Massachusetts several times to facilitate the purchase and GeoVantage's return to the marketplace as an independent entity.

11. On August 12, 2008, GeoVantage filed an Amended and Restated Certificate of Incorporation of GeoVantage, Inc. ("Certificate").

12. The Certificate expressly recognized that a director could be personally liable to GeoVantage for any breach of the director's duty of loyalty to GeoVantage or its stockholders, for acts or omissions not in good faith or which involve intentional misconduct or a knowing violation of law, and for any transaction from which the director derived any improper personal benefit.

13. On August 11, 2008, Kain signed a Series A Convertible Preferred Stock Purchase Agreement (the "2008 SPA"). By executing the 2008 SPA, Kain agreed that the

3

intellectual property of GeoVantage would be protected by each employee and consultant and that each employee and consultant would sign an Inventions Assignment, Non-Disclosure and Non-Competition Agreement. Kain was obligated to assent that a GeoVantage employee which developed or became aware of proprietary information or intellectual property would acknowledge that GeoVantage was the owner of this proprietary information or intellectual property. Kain was also obligated to maintain in confidence the company's proprietary information or intellectual property and not to disclose it or file patents on it. Kain was also prohibited from competing with GeoVantage for one year after the termination of his employment or soliciting or diverting entities with relationships or respective relationships with GeoVantage. Kain later signed amendments to 2008 SPA in 2009 and 2012 which reaffirmed the same obligations.

14. As part of his management duties for the re-formed GeoVantage, Kain participated in management meetings by weekly conference call every Tuesday or Wednesday from 2008 until January 3, 2013. As Chief Technology Officer, he developed software and shipped it to Massachusetts. Kain sent regular communications to GeoVantage and its employees in Massachusetts by post, email, and telephone as part of his employment and oversight responsibilities.

15. In or around January 2008, Kain brought in James R. Summerville to work for GeoVantage and in or around June 2010, Kain also brought in Joshua C. Summerville to work for GeoVantage. James Summerville acted as a full time employee. Joshua Summerville acted as a subcontractor. Kain was responsible for ensuring that James Summerville and Joshua Summerville executed confidentiality agreements before they were made aware of GeoVantage's proprietary information and intellectual property. GeoVantage has been unable to locate signed

4

agreements for both individuals. GeoVantage therefore alleges, on information and belief, that Kain failed to fulfill his responsibility of obtaining signatures of James Summerville and Joshua Summerville on confidentiality agreements.

### III. GeoVantage's Intellectual Property and its Memorandum of Understanding with SimWright

16. When ownership of GeoVantage transferred from John Deere to Kain, Pevear, and Herring, GeoVantage owned all rights to the intellectual property used by the business, including without limitation work undertaken by SimWright. GeoVantage's intellectual property includes the GeoScanner software.

17. In May 2008, after GeoVantage returned as an independent entity, Kain persuaded GeoVantage to continue its business relationship with SimWright. Kain actively worked with SimWright to create the Memorandum of Understanding ("MOU") whereby SimWright would act as a subcontractor to GeoVantage. The terms of the MOU stated explicitly that GeoVantage was the current owner of all intellectual property associated with any development of hardware or software that was accomplished while SimWright was under contract to GeoVantage or John Deere. Specifically, the MOU provided the following:

> **Contracted Software Development:**
> GeoVantage Inc. will from time to time require software development from SimWright. It is expected that every task will be fully documented in a task specific SOW with an associated cost provided by SimWright. <u>It is without exception however, that any software developed by SimWright under task by GeoVantage will be solely owned by GeoVantage.</u>
> *Id.* at 4, ¶ 14 (emphasis added).
>
> **Non-contracted software development:**
> <u>GeoVantage is the current owner of all intellectual property associated with any development of hardware or software that was accomplished while SimWright was under contract to GeoVantage or John Deere. Any changes made for any reason by SimWright to any software obtained from John Deere or John Deere employees for any purpose is the Intellectual Property of GeoVantage.</u> GeoVantage is also aware that SimWright has made software updates to GeoVantage Intellectual Property in the intervening period

5

between the exit [of] John Deere from the remote sensing business and the current time. It is acknowledged that this MOU establishes that <u>GeoVantage is the owner of the Intellectual Property resulting from changes made by SimWright in the intervening period between the exit [of] John Deere from the remote sensing business and execution of this MOU.</u>
*Id.* at 5, ¶ 15 (emphasis added).

If SimWright requires any modification to a standard GeoVantage output in order to achieve a SimWright value added feature, then this should be proposed to GeoVantage for approval. In all cases any SimWright-proposed modification to a GeoVantage output product remains GeoVantage Intellectual Property.
*Id.* at 5, ¶ 16.

18. Kain assured GeoVantage in multiple board meetings that GeoVantage's trade secrets and confidential information were protected with regard to SimWright.

19. In September 2009, GeoVantage attempted to put in place a full contract with SimWright. GeoVantage provided this contract to Kain for his submission to SimWright due to his prior relationship with the principals of SimWright. Kain, who acted as GeoVantage's agent in its dealings with SimWright, resisted having SimWright sign a more formal contract, stating in one board meeting and subsequent communications, including email, that the formal contract was too complicated.

20. Pevear and Herring continued to request through conversation and email communication that Kain put the promised contract in place but Kain continued to resist. Accordingly, GeoVantage and SimWright only worked under the MOU.

21. In reliance on the MOU between GeoVantage and SimWright and in reliance on Kain's assurances and recommendation, GeoVantage placed in SimWright's possession a substantial amount of hardware and software.

### IV. <u>SimWright Claims Ownership of Intellectual Property Which SimWright Had Specifically Contracted to Develop For GeoVantage Despite Kain's Assurances to the Contrary</u>

6

22. In or around 2009, GeoVantage engaged SimWright to, *inter alia*, modify the GeoScanner software to work with GeoVantage's GeoPod.

23. Over the course of three years, GeoVantage paid SimWright more than $150,000 to have GeoScanner modified and deployed for use with GeoPod.

24. In or around February 2012, GeoVantage learned that SimWright had been developing "Phoebus," software that would work with GeoVantage's unique and proprietary GeoPod. GeoVantage permits GeoPod to be used or manipulated in a certain authorized manner and never authorized the development of Phoebus for use in the GeoPod.

25. Because the software architecture of Phoebus worked with GeoVantage's GeoPod hardware, Phoebus effectively could replace GeoScanner, the software code that John Deere and GeoVantage had originally directed SimWright to create. The Phoebus software is directly derivative of GeoVantage's GeoScanner software and takes advantage of the approximately 15 years of development work required to build GeoVantage's technology platform.

26. On or about June 26, 2012, Kain informed the GeoVantage board that SimWright intended to claim ownership of GeoVantage's intellectual property that GeoVantage contracted SimWright to develop. Kain's report conflicted with assurances that Kain had provided to GeoVantage in board meetings over several years that no such issue existed, as well as the MOU that Kain negotiated and the more formal contract Kain was responsible for obtaining.

27. On July 11, 2012, after being informed of the new intellectual property issue, Pevear and Kain travelled to Navarre, Florida, to meet with Kerry Christopher and Dan Mathews of SimWright. During the meeting, and through subsequent communications between the parties, GeoVantage learned that SimWright claims it owns the Phoebus software currently operating the "GeoPod." SimWright has demanded GeoVantage pay approximately $300,000 to

7

license the source code of the Phoebus software, and $120,000 to license the use of the Phoebus software.

## V. GeoVantage Learns that Kain Has Founded a New Business Using GeoVantage Intellectual Property

28. On January 2, 2013, Kain transmitted an email to GeoVantage resigning from the GeoVantage Board of Directors.

29. On the very same day that Kain resigned, a company called WaldoAir Corporation ("WaldoAir") went live on the internet. GeoVantage eventually learned that Kain had participated in the formation of WaldoAir with James R. Summerville and Joshua C. Summerville, former employee of and subcontractor for GeoVantage, respectively.

30. WaldoAir is a direct competitor of GeoVantage, offering for sale a system with similar hardware components and using software that operates in the same fashion as GeoScanner and/or Phoebus.

31. Because of the highly specialized nature of this software and hardware, it would require several years of dedicated engineering effort to create such a system.

32. WaldoAir is using GeoVantage's navigation solution that Kain developed while he was an employee for GeoVantage. WaldoAir is using GeoVantage's proprietary Mission Planning software which has been implemented by SimWright.

33. WaldoAir is also using the Phoebus software which is derivative of GeoVantage's intellectual property and covered by the MOU with SimWright and therefore owned by GeoVantage. Because GeoVantage takes measures to protect its software by using secure computer systems and by controlling access to its assets, Phoebus could only have been provided to WaldoAir by SimWright or by Kain.

8

34. On or around January 20, 2013 and February 24, 2013, Kain surreptitiously applied for two patents using GeoVantage's intellectual property, with application numbers 61/849,172 and 61/849,279, respectively. The "Scanning Camera for Aircraft" (61/849,172) patent was conceived at GeoVantage and is based on confidential and proprietary design documents circulated only within GeoVantage. The "Recursive Bundle Adjustment Processing Algorithm" (61/849,279) patent was part of GeoVantage's image processing development and prototype code which Kain developed while he was an employee. As patent applications require substantial preparation, Kain was, on information and belief, involved with drafting these two applications while he was both a director and employee of GeoVantage.

35. On March 3, 2013, Kain transmitted a letter to GeoVantage stating that he was "resigning as an employee of GeoVantage effective immediately" and that "I am pursuing other opportunities."

36. WaldoAir and Kain, using GeoVantage's confidential information and trade secrets in WaldoAir's products, have directly solicited at least two GeoVantage customers.

37. Upon information and belief, WaldoAir could not have obtained GeoVantage's intellectual property without the cooperation of Kain. WaldoAir also could not have entered into business as rapidly as it has without the use of GeoVantage's software.

38. GeoVantage's trade secrets and confidential information have been developed by GeoVantage through the past and continuing expenditure of substantial time, effort and money.

39. GeoVantage also takes many measures to protect its trade secrets and confidential information. For example, GeoVantage requires protection of its intellectual property by its customers through its contracts with them. GeoVantage also enters into confidentiality agreements with development partners. Security for access to GeoVantage's trade secrets is

9

further controlled internally through the use of secure computer systems and passwords. GeoVantage also makes its employees aware of the importance of confidentiality. GeoVantage's trade secrets are accessible to customers and partners only by secure FTP sites to prevent unauthorized third party electronic interception and to reduce the ease of unauthorized forwarding by customers. When GeoVantage believes in good faith that its trade secrets have been violated, it makes an appropriate response as it has done so here.

## COUNT I
### (Breaches of Fiduciary Duties)

40. GeoVantage repeats and incorporates by reference all of the preceding allegations.

41. As a director and officer of GeoVantage, Kain owed fiduciary duties to GeoVantage.

42. Kain breached his fiduciary duties to GeoVantage in numerous respects, including without limitation, (i) by working on a venture directly competitive to GeoVantage while employed at GeoVantage; (ii) by taking GeoVantage's trade secrets and confidential information to compete directly with GeoVantage; (iii) by disclosing GeoVantage's trade secrets and confidential information to WaldoAir; and (iv) by soliciting GeoVantage's customers for the benefit of WaldoAir.

43. Kain's breaches have caused GeoVantage irreparable harm and will continue to cause irreparable harm, and has caused GeoVantage damages in an amount to be determined at trial. GeoVantage additionally seeks disgorgement of the compensation paid to Kain during his period of disloyalty to GeoVantage, in an amount to be determined at trial.

## COUNT II
### (Misappropriation of Confidential Information and Trade Secrets)

44. GeoVantage repeats and incorporates by reference all of the preceding allegations.

10

45. GeoVantage owns the trade secrets and confidential information described above.

46. GeoVantage has taken reasonable steps to protect its trade secrets and confidential information.

47. Kain misappropriated GeoVantage's trade secrets and confidential information by using improper means in breach of a confidential relationship to use and/or disclose GeoVantage's trade secrets and confidential information through, including without limitation (i) the transfer to WaldoAir of trade secrets and confidential information that he developed or became aware of during his work for GeoVantage, and (ii) his cooperation with SimWright to receive GeoVantage's trade secrets for the benefit of his competing company, WaldoAir.

48. Kain's misappropriation of GeoVantage's confidential information and trade secrets has caused GeoVantage irreparable harm and will continue to cause irreparable harm, and has caused GeoVantage damages in an amount to be determined at trial.

### COUNT III
### (Misappropriation of Trade Secrets- M.G.L. ch. 93, § 42)

49. GeoVantage repeats and incorporates by reference all of the preceding allegations.

50. M.G.L. ch. 93, § 42 provides, *inter alia*, that whoever steals, unlawfully takes, conceals, or copies, or by fraud or deception obtains with intent to convert to his own use, a trade secret, regardless of value shall be liable in tort for damages in an amount up to double those found.

51. The trade secrets described above are trade secrets of GeoVantage within the meaning of M.G.L. ch. 266, § 30 and M.G.L. ch. 93, § 42.

52. GeoVantage has taken reasonable steps to protect its trade secrets.

53. Kain misappropriated GeoVantage's trade secrets by using improper means in breach of a confidential relationship to use and/or disclose GeoVantage's trade secrets through,

11

including without limitation (i) the transfer to WaldoAir of trade secrets and confidential information that he developed or became aware of during his work for GeoVantage, and (ii) his cooperation with SimWright to receive GeoVantage's trade secrets for the benefit of his competing company, WaldoAir.

54. Kain's misappropriation of GeoVantage's trade secrets has caused GeoVantage irreparable harm and will continue to cause irreparable harm, and has caused GeoVantage damages in an amount to be determined at trial, which amount should be doubled by the Court.

## COUNT IV
### (Unfair and Deceptive Trade Practices- M.G.L. ch. 93A, § 11)

55. GeoVantage repeats and incorporates by reference all of the preceding allegations.

56. Kain was and is engaged in a trade or commerce in Massachusetts within the meaning of Mass. Gen. Laws ch. 93A.

57. Kain has engaged in unfair and deceptive acts and practices, as described above, in violation of Section 2 of Mass. Gen. Laws ch. 93A. Those acts and practices include, without limitation, misappropriating GeoVantage's confidential information and trade secrets subsequent to his employment with GeoVantage.

58. Kain's violations of Section 2 have been knowing and/or willful.

59. Kain's unfair and deceptive trade practices have caused GeoVantage irreparable harm and will continue to cause irreparable harm, and have caused GeoVantage damages in an amount to be determined at trial, which should be doubled or trebled by the Court.

## COUNT V
### (Negligence)

60. GeoVantage repeats and incorporates by reference all of the preceding allegations.

12

61.   As a director, Vice President, Chief of Technology, and Head of Operations at GeoVantage, Kain had a duty to GeoVantage of reasonable care, including without limitation (i) to ensure that a more formal contract was in place with SimWright to protect GeoVantage's intellectual property; (ii) to ensure that James Summerville and Joshua Summerville signed confidentiality agreements regarding GeoVantage's intellectual property; and (iii) to protect GeoVantage's intellectual property.

62.   Kain breached those duties.

63.   Kain's breaches have caused GeoVantage irreparable harm and will continue to cause irreparable harm, and has caused GeoVantage damages in an amount to be determined at trial.

## REQUESTS FOR RELIEF

GeoVantage respectfully requests the Court enter the following relief:

a.   On Count I of the Complaint, award GeoVantage its damages;

b.   On Count II of the Complaint, award GeoVantage its damages;

c.   On Count III of the Complaint, award GeoVantage double damages;

d.   On Count IV of the Complaint, award GeoVantage treble damages;

e.   On Count V of the Complaint, award GeoVantage its damages;

f.   Preliminarily and permanently enjoin Kain and his agents, servants, employees and attorneys, and persons in active concert or participation with them, from (1) using, transferring, licensing, selling, or otherwise exploiting GeoVantage trade secrets, confidential information and other intellectual property; and (2) prosecuting U.S. Patent Applications 61/849,172 and 61/849,279 (referred to in paragraph 34 above), all foreign counterparts thereof, and all other patent applications based on GeoVantage trade secrets, confidential information and other intellectual property;

g.   Order Kain to return to GeoVantage all GeoVantage trade secrets, confidential information and other intellectual property;

h. Order Kain to assign to GeoVantage U.S. Patent Applications 61/849,172 and 61/849,279 (referred to in paragraph 34 above), all foreign counterparts thereof, and all other patent applications based on GeoVantage trade secrets, confidential information and other intellectual property;

i. Award GeoVantage prejudgment interest and post-judgment interest at the statutory rate;

j. Award GeoVantage its reasonable attorneys' fees and costs; and

k. Award GeoVantage such other and further relief as the Court deems just and fair.

### JURY DEMAND

GeoVantage requests a trial by jury on all claims so triable.

GEOVANTAGE, INC.,

By its attorneys,

T. Christopher Donnelly (BBO# 129930)
Brendan T. St. Amant (BBO# 672719)
DONNELLY, CONROY & GELHAAR, LLP
One Beacon Street, 33rd Floor
Boston, Massachusetts 02108
(617) 720-2880

Dated: July 11, 2013